UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Howell                          :
                                :
v.                              :    No. 3:02cv736 (JBA)
                                :
New Haven Board of Education    :

FILED
Mar 15  12 53 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN.

## Ruling on Defendant's Motion for Summary Judgment [Doc. # 30]

Defendant New Haven Board of Education has filed a motion for summary judgment on Counts One and Two of plaintiff's complaint, which were brought under the Connecticut Fair Employment Practices Act, Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act of 1990. Both counts allege that plaintiff was discriminated against on account of a perceived disability. Defendants argue that plaintiff has not set forth facts establishing that the defendant regarded him as disabled. For the reasons discussed below, defendant's motion is granted as to Count One, and denied as to Count Two.

### I. Background

Plaintiff D. Clark Howell is a math teacher in the New Haven public school system. He worked at the Hyde Leadership School from August of 1996 through September of 2000, when he was placed on administrative leave pending a psychiatric review. After receiving a physician's certification of his emotional fitness to return to work, Howell was transferred to a new teaching assignment at the Coop Arts and Humanities High School, where he

1

suffered a 25% reduction in his rate of pay.

Howell commenced this action in state court, claiming that the defendant violated his rights under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, et seq. On April 25, 2002, defendant removed this case to federal court.

The Plaintiff states that he was diagnosed with Type II diabetes in 1997, and with depression in February of 1998. See Plaintiff's Responses to Defendant's First Interrogatories [Doc. # 38, Ex. A] at ¶ 9. While he continued to receive excellent employee reviews, in January of 2000 his diabetes became worse, resulting in a greatly reduced energy level until his condition was properly diagnosed and his medication modified. See id. Howell mistakenly believed that his reduced energy level was related to depression, and informed Alan Grenet, the assistant principal, that he was being treated for depression. See id. at ¶ 4. Grenet informed Hyde principal John Russell that Howell has taking medication for depression in January of 2000, after which, Howell alleges, Russell made numerous references to Howell's depression and medication. See id. For example, Russell made comments such as: "I know all about your problems with your medication," and "I don't know what side effects those pills you

2

take might be having on your behavior, but I can't trust you anymore." Id.  Howell himself told Russell about his treatment for depression in April 2000.  Id.

According to Howell, in the months following his disclosure to Russell that he was being treated for depression, Russell repeated the comments about medication Howell was taking, and made several false accusations against him, which were memorialized in memoranda placed in Howell's personnel file.  See id. at ¶ 6.  One such memorandum, for example, chastised Howell for using "cynical and sarcastic remarks, actions, and behaviors to other staff members and in the presence of students."  Id.  Other memoranda accused Howell of taking physical and aggressive action toward of student, using inappropriate language with a student, and submitting mid-term grades late.  See id.

The strife between Howell and the Hyde School principal continued to escalate through the Spring and into the Fall of 2000.  On September 15, 2000, Howell alleges that he entered a room in which Russell was talking with a student.  Russell referred to Howell in front of the student as an employee who went "psycho."  Id. at ¶¶ 7; 14.  According to Howell, Russell told John Acquavita, the football coach at Hyde, that Howell's "health problems" were a source of "concern."  Id. at ¶ 14.

Subsequently, Howell was ordered to attend a hearing with the Superintendent of Schools, Reginald Mayo, on September 25,

3

2000. At this hearing, Howell claims that Russell falsely accused him of making "inappropriate statements to youngsters" and of grabbing a student. Superintendent Mayo stated that there was a "concern for the safety and welfare of others in the building" and, according to Howell, falsely stated that Howell had "put a gun to [his] head" and had "threatened employees at Hyde," and that the events mentioned were "sexual in nature." Id. at ¶ 5. At the hearing, the Superintendent placed Howell on leave pending a psychiatric review. Superintendent Mayo sent Howell a letter of October 12, 2000 confirming that as a result of the September 25 hearing, "you were placed on administrative leave, with pay, pending your production of a physicians's certification that you are presently and emotionally fit to return to work and can perform the duties of your position." See Mayo Letter [Doc. # 31, Ex. 2]. On October 16, 2000, psychiatrist Robert Ostroff, M.D., submitted a letter to the school system stating that Howell was capable of performing his job, after which Howell claims that he was informed he would not be allowed to return to Hyde. The defendant states that a second hearing was held on November 16, 2000, to return Howell from administrative leave and to discuss his new teaching assignment at Coop Arts and Humanities High School." See Letter of Starlet Wilder, Director, Personnel and Labor Relations, Nov. 16, 2000 [Doc. # 31, Ex. 3]. Howell disputes the characterization of the

4

November 16 event as a hearing, but agrees that Dr. Mayo informed him on this date that he was to return to teach at the Coop Arts and Humanities High School. See Plaintiff's Responses to Def.'s First Interrogatories [Doc. # 38, Ex. A] at ¶ 6. Howell states that this transfer was a demotion, as his rate of pay at the Coop School decreased $10,500 from his salary at the Hyde Leadership School. See id. at ¶ 3.

Howell claims that his removal from the Hyde School parallels the defendant's refusal to retain an art teacher at the school after learning the teacher suffered from depression. See id. at ¶ 14.

## II. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In moving for summary judgment against a party who will bear the burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("The moving party

is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). In order to defeat summary judgment, the non-moving party must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

When deciding a motion for summary judgment, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). However, "[w]hen a motion for summary judgment is made and supported as provided in [the Federal Rules], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading." Fed. R. Civ. P. 56(e). Instead, the party opposing summary judgment must set forth the specific facts in affidavit or other permissible evidentiary form that demonstrate a genuine issue for trial. See id.

### III. Discussion

#### A. Connecticut Fair Employment Practices Act

Count One of Howell's complaint sets forth a claim under the Connecticut Fair Employment Practices Act ("CFEPA"), alleging that the "defendant has discriminated against the plaintiff because of a perceived disability." See Complaint [Doc. # 1] at Count One, ¶ 36. The defendant moved for summary judgment on this Count on the ground that Howell has not set forth facts demonstrating that the defendant perceived him as disabled. Howell disagrees, and points to a variety of facts in the record. Since defendant's motion was filed, however, it has become clear that the facts set forth by Howell in support of his claim are legally irrelevant, as the Second Circuit has ruled that CFEPA does not recognize claims for perceived disability. See Beason v. United Technologies Corp., 337 F.3d 271, 279-80 (2d Cir. 2003) ("Because the specific language of CFEPA makes no mention of a cause of action for 'perceived' or 'regarded as' physical disability discrimination, we do not believe it was part of the Connecticut legislature's purpose that such a cause exist.").

Although the parties have not addressed the Second Circuit's decision in Beason, the plaintiff has fully responded to defendant's summary judgment motion, and has left no ambiguity about the nature of his claim. In particular, Howell confirmed in his response that he makes no claim that he is actually

7

disabled. See Brief in Opposition to Motion for Summary Judgment [Doc. # 38] at 6 ("Obviously, the plaintiff is not disabled and he does not claim to be disabled. Rather, the defendant perceived him, wrongly and wrongfully, as such and discriminated against him for that reason . . ."). Because plaintiff's facts demonstrating that he was perceived as disabled are immaterial to his CFEPA claim in light of binding Second Circuit precedent, defendant's motion for summary judgment as to Count One is granted.

### B.  Americans with Disabilities Act and Rehabilitation Act[1]

Howell's ADA and Rehabilitation Act claims rest on the facts, recounted above, which Howell asserts demonstrate that the defendant New Haven Board of Education discriminated against him on account of his perceived disability. The New Haven Board of Education has moved for summary judgment on these claims, arguing that Howell has not set forth facts demonstrating that the school system perceived that Howell was disabled within the meaning of the ADA, because he has not shown that he was regarded as

---

[1] Count Two of plaintiff's complaint raises both ADA and Rehabilitation Act claims, and the defendant has moved for summary judgment on both claims. The Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990 . . . as such sections relate to employment." 29 U.S.C. § 794(d). The analysis of the issues in this case is the same under both statutes.

8

substantially limited in his ability to work in a broad range of jobs within his field. Howell argues that his evidence is sufficient for a jury to conclude that the defendant regarded him as disabled in this way.

The Americans with Disabilities Act, 42 U.S.C. § 12112(a), prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Disability is defined to include "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). To establish a prima facie case under the ADA, the plaintiff must demonstrate by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." <u>Giordano v. City of New York</u>, 274 F.3d 740, 747(2d Cir. 2001). Thus, to succeed on his claim, Howell must "not only show that the defendant "regarded [him] as somehow disabled," but that the Board of

9

Education "regarded [him] as disabled <u>within the meaning of the ADA</u>." <u>Giordano</u>, 274 F.3d at 748 (citations and internal quotation marks omitted) (emphasis in original).

In this case, as Howell acknowledges, to prove he was regarded as disabled within the meaning of the ADA, he must demonstrate that he was perceived as substantially limited in his ability to perform the major life activity of working. Regulations of the Equal Employment Opportunity Commission (EEOC) define a substantial limitation on the major life activity of working as:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 CFR § 1630.2(j)(3)(I).

Interpreting this regulation, the Supreme Court stated that "[t]o be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice." <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 491-92 (1999).

It is clear, therefore, a belief by the defendant only that Howell was limited in his ability to teach at the Hyde School would not be cognizable under the ADA. In <u>Sutton</u>, for example, the plaintiffs alleged that United Airlines regarded their poor

10

vision as precluding them from holding positions as a "global airline pilot." The Supreme Court concluded that "[b]ecause the position of global airline pilot is a single job, this allegation does not support the claim that respondent regards petitioners as having a substantially limiting impairment. . . . Indeed, there are a number of other positions utilizing petitioners' skills, such as regional pilot and pilot instructor to name a few, that are available to them." Sutton, 527 U.S. at 493. Likewise, in Giordano, the Second Circuit concluded that even "voluminous evidence" that the defendant regarded the plaintiff as unable to work as a New York City police officer on account of his disability was insufficient to establish an ADA claim because the plaintiff failed to point to evidence that he was regarded as limited in his ability to perform a broad class of jobs in his field. See Giordano, 274 F.3d at 749 ("The record contains no evidence from which we can infer that the defendants thought, or had grounds for thinking, that other jobs in the public or private sector-such as, for example, a job as a security guard or a private investigator, or with a police department that does not require every officer to be capable of patrol duty-carry the same nature or degree of risk."); see also Equal Employment Opportunity Commission v. J.B. Hunt Transport, Inc., 321 F.3d 69, 75 (2d Cir. 2003) ("Driving freight-carrying tractor-trailer trucks over long distances is neither a 'class of jobs' nor a

11

'broad range of jobs,' . . . but rather a specific job with specific requirements.").

A perception that Howell was unable to work in any kind of teaching position or in the educational field, however, would be sufficient to establish an ADA claim. Teachers work in both public and private schools, with children and adults of all ages and abilities, in classroom settings and as tutors. Teaching, therefore, is sufficiently broad to be deemed a class of jobs. In <u>Bartlett v. New York State Board of Law Examiners</u>, 226 F.3d 69, 84 (2d Cir. 2000), for example, the Second Circuit found the practice of law to be a class of jobs, not a single job, distinguishing <u>Sutton</u>, because "the number of lawyers practicing law, relative to the number of people holding a law degree, is surely larger in proportion than the number of global airline pilots relative to the number of people who hold licenses to fly."

While the fact that Howell was transferred to a teaching position at another school is powerful evidence that the Board of Education did not perceive Howell as disabled within the meaning of the ADA, i.e. substantially limited in his ability to perform a range of teaching jobs, it does not dispose of Howell's claim. The transfer which resulted in a salary diminution reflects the result of a deliberative disciplinary process, in which Howell's misconduct, as reported by Russell as a participating school

official, was considered. Because plaintiff's evidence can demonstrate that principal John Russell perceived him as mentally disabled and, by Howell's account, falsely accused him of bad conduct, to the extent Russell's accusations were the product of his perception of Howell's disability, they may be shown to have in effect tainted the disciplinary process that resulted in Howell's transfer. Viewed in the light most favorable to plaintiff, there is evidence indicating that Hyde School principal John Russell was aware and concerned that Howell was taking medication for depression, contemporaneously accused Howell of inappropriate behavior, and believed that Howell should not be teaching or working in a school setting. For example, Howell has submitted evidence that the Hyde School principal specifically told a student upon Howell's entry into the room: "You have to be careful of your behavior in school, Nikole, because you may one day be an employer and have an employee that goes psycho on you." Plaintiff's Responses to Defendant's First Interrogatories [Doc. # 38, Ex. A] at ¶ 7 (incorporating Complaint [Doc. # 1] at ¶ 27). A reasonable jury might conclude from this statement that Russell perceived Howell as being unsuitable for any teaching job because of mental instability, that is, that he regarded Howell as disabled within the meaning of the ADA and conveyed the results of his perception in the negative personnel entries and to members of the disciplinary

13

committee.

Thus, the adverse employment action of his transfer from the Hyde School to the Coop Arts and Humanities High School, where Howell earns approximately $10,000 less than he did at Hyde, permits a reasonable inference that the false accusations against Howell resulted from Russell's perception of Howell as mentally disabled, and that Russell thus infected the proceedings leading to Howell's involuntary transfer from the Hyde School, since as a participant in the disciplinary process, Russell was in a position to influence the outcome. While this causal chain is tenuous, the evidence provides more than a "metaphysical doubt" as to the basis for Howell's transfer. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A jury may find that the transfer occurred because Howell was regarded as disabled within the meaning of the ADA, without necessity of imputing discriminatory intent to all the school officials participating in the process leading to the transfer and reduced salary.

**IV. Conclusion**

For the foregoing reasons, defendant's motion for summary judgment [Doc. # 30] is hereby granted in part as to Count One of plaintiff's complaint, and denied as to Count Two.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 15th day of March 2004.

15