UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

D. CLARK HOWELL                      :

VS.                               :        NO. 3:02CV736(JBA)

NEW HAVEN BOARD OF EDUCATION :       JUNE 14, 2004

## JOINT TRIAL MEMORANDUM

**(1)**    **TRIAL COUNSEL**

    *For the Plaintiff:*

        Norman A. Pattis
        Katrena Engstrom
        Timothy J. Mahoney
        Kim Coleman Waisonovitz
        51 Elm Street
        New Haven, CT 06510
        203.562.9931
        Fax: 203.776.9494
        E-Mail: napatty1@aol.com

    *For the Defendant:*

        Audrey C. Kramer
        Assistant Corporation Counsel
        165 Church Street (4th Floor)
        New Haven, CT 06510
        203.946.7968
        Fax: 203.946-7942
        E-Mail: Akramer@newhavenct.net

1

**(2)    JURISDICTION**

The basis for the court's subject matter jurisdiction is 28 U.S.C. §§ 1331, 1343(3) and 1367(a) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, *et seq.* and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, *et seq.* The defendant removed this action to this court after it was filed originally in the Superior Court for the Judicial District of New Haven.

**(3)    JURY-NONJURY**

This is a jury case.

**(4)    LENGTH OF TRIAL**

Three to four days.

**(5)    FURTHER PROCEEDINGS**

None.

**(6)    NATURE OF CASE**

This is a "perceived as" disability discrimination action brought by a teacher in the New Haven public schools pursuant to the Americans with Disabilities Act and the Rehabilitation Act.

2

**(7)     TRIAL BY MAGISTRATE JUDGE**

Defendant objects to Magistrate Judge.

**(8)     LIST OF WITNESSES AND EXHIBITS**

**(a)     Witnesses:**

<u>**For the Plaintiff**</u>

1.     The plaintiff will testify concerning all allegations in his complaint.

2.     John Russell will testify concerning his position with the defendant, his interactions with the plaintiff, his interactions with the Superintendent of Schools, and his views on psychotherapy and psychiatric conditions.

3.     Jeanne Lovrin will testify concerning other acts of blatant discrimination by the defendant and by John Russell against persons suffering from psychiatric conditions.

4.     Al Grenet will testify concerning communications he had with the plaintiff and with John Russell concerning the plaintiff.

5.     Ariana Buckley will testify concerning the plaintiff's work as a teacher and his interactions with Russell.

6.     John Waselik will testify concerning the plaintiff's work as a teacher and his interactions with Russell.

7.     Gary Aurora will testify concerning the plaintiff's work as a teacher and his interactions with Russell.

8.     Sue Chang will testify concerning plaintiff's medical care.

9.     Allison Improta will testify concerning Russell's behavior and

interactions with the plaintiff.

10. Louis Puglisi will testify concerning Russell's statements and actions regarding the plaintiff and psychiatric issues.

11. Terry Eicher will testify concerning the plaintiff's mental health treatment and his communications with the defendant and with Russell.

12. Reginald Mayo will testify concerning his actions regarding the plaintiff and his interactions and communications with Russell.

13. Pat Lucan will testify concerning the statements and actions of Mayo and Russell.

14. Jim Ferguson will testify concerning the statements and actions of Mayo and Russell.

15. Ron LeCointe will testify concerning false statements made by Russell in his attempt to justify his actions regarding the plaintiff.

16. Paul Raccio will testify concerning false statements made by Russell in his attempt to justify his actions regarding the plaintiff.

17. Constance Freer will testify concerning actions and statements by Russell to and regarding the plaintiff.

18. John Acquavita will testify concerning interactions between Russell and the plaintiff.

19. Joseph Pulit will testify concerning interactions between Russell and the plaintiff.

20. Nikole Payton will testify concerning statements made by Russell concerning the plaintiff.

4

21.   Theresa Santiago will testify concerning administrative practices of Russell.

22.   Starlet Wilder will testify concerning all allegations of the complaint, including but not limited to actions by Russell, Mayo and herself regarding the plaintiff and regarding mental health issues.

23.   Robert Ostroff will testify concerning the plaintiff's treatment and concerning communications with the defendant and its agents.

24.   Pamela Barker Jones will testify concerning instructions from the defendant regarding the plaintiff.

25.   Raven Hodge will testify concerning statements made about the plaintiff by Russell.

26.   Paul Raccio will testify concerning instructions given him by Russell concerning the plaintiff and his response thereto.

27.   Sue Gilliam will testify concerning instructions and statements by Russell concerning the plaintiff.

28.   Dr. Lee Jung will testify concerning plaintiff's medical treatments and concerning communications with the defendant.

29.   Zelphia Hunter will testify concerning the plaintiff, Russell and other professional staff at Hyde School.

30.   Paul Hennessey will testify concerning the plaintiff's actions at Hyde School.

31.   Jake Jarvis will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

5

32.    Stephen Jefferson will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

33.    Charles Neal will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

34.    Michael Neal will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

35.    Jennifer Powers will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

36.    Lonnie Shealy will testify concerning Russell's actions toward and treatment of the plaintiff.

37.    Michael Claxton will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

38.    Scott X. Esdaile will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

39.    Kathleen Granfield will testify concerning the plaintiff's actions at Hyde School and concerning school policies and practices.

40.    Chanel Blackmon will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

41.    Anjenique Baker will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

6

42.   Terrance White will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

43.   Kenny Foster, Jr., will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

44.   Kenara Foster will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

45.   Felisha Huertas will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students, and also will testify concerning the actions of other staff members.

46.   Khalil Ibrahima Kourouma will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

47.   Aboubacar Gassama will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

48.   Shaniqua Garcia will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

49.   Shantel Garcia will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

50.   Aneudys Peguero will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

51.    Dacia Bucknor will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

52.    Cheri Walker will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

53.    Rikkia Hunter will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

54.    Joseph Hunter will testify concerning the plaintiff's actions at Hyde School and the impact of his forced transfer upon the school and the students.

55.    John Crotty will testify concerning plaintiff's injuries and concerning the disparate treatment to which the plaintiff was subjected.

56.    Mike Martone will testify concerning plaintiff's injuries and concerning the disparate treatment to which the plaintiff was subjected.

57.    George Wasilenko will testify concerning plaintiff's injuries and concerning the disparate treatment to which the plaintiff was subjected.

58.    Ryan Gandreau will testify concerning plaintiff's injuries and concerning the impact of plaintiff's punishment upon the Hyde School.

## For the Defendant

### Dr. Reginald Mayo – Superintendent for the Board of Education

54 Meadow Street
New Haven, CT
**Anticipated Testimony Time – 2 hours**

Dr. Mayo will testify as to the reasons the plaintiff was transferred from Hyde to Co-op.


### John Russell – Principal of Hyde School

54 Meadow Street
New Haven, CT

**Anticipated Testimony Time – 2 hours**

Principal Russell will testify as to behaviors of the plaintiff he brought to the attention of Dr. Mayo. He will also testify as to the mission of Hyde Leadership School and the problems the plaintiff's behavior caused among the staff at Hyde.


### Alan Grenet  – Assistant Principal of Hyde School

208 Blue Hills Avenue
Hamden, CT

**Anticipated Testimony Time – 1  hour**

Assistant Principal Grenet will testify as to behaviors of the plaintiff he felt were problematic.

9

**Pamela Barker Jones – Math Department Supervisor – New Haven Board Education**

Ms. Barker-Jones will testify as to her interactions with the Plaintiff regarding the math curriculum.

**Allison Improta – Spanish Teacher – Hyde School**

11 Weybosset Street
Shelton, CT

**Anticipated Testimony Time – 1 hour**

Ms. Improta will testify as to Mr. Howell' s behavior and how it affected his working relations with her as a colleague.

**Chris Sagnella – Science Teacher – Hyde School**

39 James Street
Hamden, CT

**Anticipated Testimony Time – 1 hour**

Mr. Sagnella will testify as to Mr. Howell' s behavior and how it affected his working relations with him as a colleague.

**John Waselik – Former Math Teacher - Hyde School**

4 Tra-Mart Drive
Uncasville, CT

**Anticipated Testimony Time – 1 hour**

Mr. Waselik will testify as to Mr. Howell' s behavior and how it affected his working relations with him as a colleague.

10

**Ariana Buckley –English Teacher  Hyde School**

**Anticipated Testimony Time – 1 hour**

Ms.. Buckley will testify as to Mr. Howell' s behavior and how it affected his working relations with his colleagues.

**Connie Freer – Guidance Counselor - Hyde School**

**Anticipated Testimony Time – 1 hour**

Ms. Freer will testify as to Mr. Howell' s behavior and how it affected his working relations with his colleagues.

**Terry Bowden – Former Student - Hyde School**

**Anticipated Testimony Time – 1 hour**

Mr. Bowden as to an incident he had with Mr. Howell.

**Stephanie Driffin – Guardian of Former Student - Hyde School**

**Anticipated Testimony Time – 1 hour**

Ms. Driffin will testify as to an incident involving a student she was guardian of.

11

**<u>Clarence Roberts – Administrative Intern – Coop Arts & Humanities High School</u>**

New Haven, CT

**Anticipated Testimony Time – 1 hour**

Mr. Roberts will testify as to the extended day program at Coop and  home bound tutoring opportunities.

**<u>Dr. Terry Eicher</u>**

291 Whitney Avenue
Hamden, CT

**Anticipated Testimony Time – 1 hour**

Dr. Eicher will testify as to his treatment of  the plaintiff.

**<u>Dr. Robert Ostroff</u>**

60 Washington Avenue
Hamden, CT

**Anticipated Testimony Time – 1 hour**

Dr. Ostroff will testify as to his treatment of  the plaintiff.

      **(b)**    **Exhibits:**

            **<u>For the Plaintiff</u>**

            1      Plaintiff's personnel file

12

2    Defendant's written policy concerning "Transfers and Promotions"

3    Brochure concerning "Hyde-New Haven" (6/30/02)

4    Strategic School Profile 1998-99

5    Hyde Leadership School Manual

6    Award to plaintiff from 1999-2000 basketball team

7    Three Howling Wolves Anthems

8    Hyde *Leadership Weekly*

9    Brochure concerning Hyde Leadership High School (7/4/01)

10   Mayo to Howell July 17, 1996

11   Evaluation of plaintiff December 19, 1996

12   Mayo to Howell February 4, 1998

13   Evaluation of plaintiff January 7, 1999

14   Russell to Howell 5/24/99 with plaintiff's response 10/2/00

15   Russell to Howell 2/28/00 with plaintiff's response 10/2/00

16   Russell to Howell 4/4/00

17   Russell to Howell 4/7/00 with plaintiff's response 10/2/00

18   Evaluation of plaintiff April 10, 2000

19   Russell to Howell 4/27/00

20   Russell to Howell 5/2/00

13

21    Russell to Howell 5/8/00 with plaintiff's response

22    Evaluation of plaintiff June 12, 2000

23    Mayo to Howell June 23, 2000

24    Russell to Howell 8/30/00 with plaintiff's response 10/12/00

25    Wilder to Howell September 18, 2000

26    Eicher to Lucan September 29, 2000

27    Mayo to Howell October 12, 2000

28    Lucan to Mayo October 16, 2000

29    Wilder to Howell November 14, 2000

30    Howell to Wilder November 16, 2000

31    Wilder to Howell November 21, 2000

32    Howell to Wilder January 5, 2001

33    Howell to Employee file January 5, 2001

34    Howell to Halloran 1/22/01

35    Halloran to Howell 1/22/01

36    Howell to Roberts January 26, 2001

37    Howell to Wilder March 15, 2001

38    Howell to Wilder March 23, 2001

39    Return receipt for Exhibit 38

14

40      Article VIII from union contract

41      Howell to Wilder 9/25/00

42      Certificate of Receipt 10/4/00

**For the Defendant**

a.      September 19, 2000 – Dr. Eicher Notes

b.      September 26, 2000 – Dr. Eicher Notes

c.      October 4, 2000 – Dr. Eicher Notes

d.      October 25, 2000 – Dr. Eicher Notes

e.      November 2, 2001 – Dr. Eicher Notes

f.      July 9, 2001 - Dr. Eicher Notes

g.      July 23, 2001- Dr. Eicher Notes

h.      October 16, 2000 – Spectrum Psychiatric Group., P.C.

i.      Memo 5/24/99 to Clark Howell from John Russell

j.      Memo 2/28/00 to Clark Howell From John Russell

k.      Memo 4/4/00 to Clark Howell From John Russell

l.      Memo 4/7/00 to Clark Howell From John Russell

m.      Memo 5/2/00 to Clark Howell From John Russell

n.      Memo 5/8/00 to Clark Howell From John Russell

15

o.    Memo 7/13/00 to Dr. Mayo from J. Russell

p.    Memo 8/30/00 to Clark Howell From John Russell

q.    Award of Arbitrators in the Matter of New Haven Federation of Teachers (D. Clark Howell) and New Haven Board of Education.

**[Plaintiff objects on grounds of irrelevance.]**

**(9)    STIPULATIONS**

**(b)    Jury Trial – Uncontroverted Facts:**

1.  At all applicable times, the defendant was acting under color of law.

2.  The defendant was and is an employer within the meaning of applicable law.

3.  The plaintiff exhausted his statutory administrative remedies.

**(1)    Proposed Voir Dire Questions:**

1.  This is a lawsuit for employment discrimination brought by a tenured teacher in the New Haven public schools against the New Haven Board of Education.  The plaintiff contends that he was discriminated against because of the defendant's incorrect perception that he suffered from a psychiatric disability. Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen to serve on the jury?

16

2.   Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3.   Does anyone here feel for any reason that citizens who believe that they have been treated illegally and unfairly should not bring suit against those they believe to be responsible?  If so, please explain.

4.   Have you or has anyone close to you ever been the victim of employment discrimination?

5.   Have you or anyone close to you ever lost a job for reasons you considered to be unfair?

6.   Has anyone here or anyone close to you ever been employed by any other Governmental unit in the State of Connecticut or elsewhere?

7.   Do you know or have you read anything or heard anything about this case, the plaintiff or any of the lawyers involved in the case?

8.   Has anyone here ever served as an appointed or elected official of state, city or local Government?

9.   Has anyone here or anyone close to you ever been involved in any political campaigns or elections?  If so, please provide details.

10.  Has anyone here or any close to you ever been employed by an attorney?

17

11.  Would you tend to favor one side or the other in this case without regard to the evidence which may be presented?

12.  Does anyone here believe that allegations of employment discrimination should be treated less seriously than other kinds of illegal activity?

13.  Does anyone here have any strong feelings about psychiatrists, psychologists or the mental health profession which would affect your ability to be impartial in deciding this case?

14.  Has anyone here ever heard of The Hyde Schools?

15.  Does anyone here belong to any club or organization which in any way is interested in the enforcement or the change of any law or laws or which is in any other way concerned with discrimination in employment or elsewhere?

16.  Does anyone here believe that the laws which prohibit discrimination on the basis of either real or perceived disability should be repealed or not enforced?

17.  Is there anyone here who would refuse to return a verdict in favor of the plaintiff even if he proved his case?

18.  Have you, or has anyone close to you, ever been a party to a lawsuit? If so, please explain.

19.  Where are you employed?

18

20.  If you are married, where is your spouse employed?

## **DEFENDANT'S PROPOSED VOIR DIRE QUESTIONS**

Counsel for the defendants in the above-captioned matter respectfully requests that the following questions be asked of potential jurors:

1.      Have you, or anyone you know, ever been diagnosed with depression or any other mental illness?

a)      If so, please state:

        i)      the nature of your relationship with this person or persons;

        ii)      whether this would affect your ability to be a juror in a case involving a transfer of an employee who alleges to be suffering from depression.

2.      Have you, or anyone you know, ever worked with anyone that has been diagnosed with depression or any other mental illness?

a)      If so, please state:

i)      the nature of your relationship with this person or persons;

ii)      the nature of the employment; and

19

       iii)    whether this would affect your ability to be a

            juror in a case involving the involuntary transfer of an

            employee who alleges to be suffering from depression?

3.     Have you, or anyone you know, ever been diagnosed with diabetes?

a)     If so, please state:

       i)    the nature of your relationship with this person

            or persons;

       ii)   whether this would affect your ability to be a

            juror in a case involving the involuntary transfer of an

            employee who alleges to be suffering from diabetes.

4.     Have you, or anyone you know, ever worked with anyone that has been

diagnosed with diabetes?

a)     If so, please state:

       i)    the nature of your relationship with this person

            or persons;

       ii)   the nature of the employment; and

       iii)   whether this would affect your ability to be a

            juror in a case involving the involuntary transfer of an

            employee who alleges to be suffering from depression?

20

5.      Have you ever been involved in the making of personnel decisions regarding transferring, hiring or firing of employees?

      a)      If so, please state:

            i)      the nature of the employment;

            ii)      your involvement in the decision making process;  and

            ii)      whether this would affect your ability to be a juror in a case involving the involuntary transfer of an employee who alleges to be suffering from depression and/or age discrimination.

6.      Have you, or any member of your family or any acquaintance been subject to an involuntary change in their employment status such as demotion, involuntary transfer or termination?

      a)      If so, please state:

            i)      The nature of your relationship with this person or person;

            ii)      the nature of the employment;

            iii)      the reason for the involuntary change in employment status; and

            iv)      whether this would affect your ability to be a

juror in a case involving an involuntary change in

employment status  by an employee  who alleges to be

suffering from depression and/or diabetes and claims

discrimination?

7.    Have you, or any member of your family or any acquaintance ever been

employed by any government agency including but not limited to the City of New

Haven?

a)    If your answer to the foregoing question is "yes," do you feel such

person was fairly treated by that employer, and if not, why not?

b)    Do you believe that anything about that experience or involvement

might affect your ability to judge this case fairly, and if so, in what

way?

8.    Have you read or otherwise learned anything about any other claims

regarding the Americans with Disabilities Act, whether reported in the

newspaper, on the radio or television, or from some other person?

a)    If you answer is yes, please provide details.

b)    Do you believe anything about that information you received

might affect your ability to judge this particular case fairly?

22

**(2)    Proposed Jury Instructions:**

1.  To prevail on a claim of intentional discrimination, the plaintiff must prove by a preponderance of the evidence, either directly or indirectly, that there is evidence of intentional discrimination.  Direct evidence would include oral or written statements showing a discriminatory motivation for the defendant's treatment of him.  Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one reasonably to believe that a perceived disability was a motivating factor in the defendant's treatment of the plaintiff. [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions § 104.03.]

2.  The plaintiff is entitled to prevail in this case if he shows that discrimination was a motivating -- as opposed to determining -- factor in the challenged employment decisions or any one of them.  [Devitt, etc., § 104.03.]

3.  Direct evidence is evidence of remarks or actions that, if believed, directly prove that the plaintiff's membership in a protected class was a factor in the defendants' adverse employment decision.  [Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).]

23

4.  To establish discrimination in failing to retain the plaintiff in a position for which he was qualified by using indirect evidence, the plaintiff must prove what is called a prima facie case of disability discrimination.  To establish a prima facie case, the plaintiff must prove each of the following elements by a preponderance of the evidence:  (1) that he was a member of a protected group; (2) that he was qualified for the position in question; (3) that he held the position in question; (4) that despite his qualifications he was removed from that position; (5) that he was removed from the position under circumstances suggesting that the defendant's perception that he was disabled was a motivating factor in his removal.  [McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Legrand v. Trustees of University of Arkansas, 821 F.2d 478 (8th Cir. 1987), cert. denied, 485 U.S. 1034 (1988); Blackwell v. Sun Electric Corp., 696 F.2d 1176 (6th Cir. 1983); Cockrham v. South Central Bell Telephone Co., 695 F.2d 143 (5th Cir. 1983); Meiri v. Dacon, 759 F.2d 989 (2d Cir.), cert. denied, 474 U.S. 829 (1985); Geisler v. Folsom, 735 F.2d 991 (6th Cir. 1984); Robinson v. Arkansas State Highway & Transportation Commission, 698 F.2d 957 (8th Cir. 1983); Lerma v. Bolger, 689 F.2d 589 (5th Cir. 1982).]

5.  It is necessary only that the plaintiff prove that the defendant in fact took some adverse employment action against him and that the defendant's

24

perception that he was disabled was a factor which played a part in the defendant's decision; in other words, that the defendant had a discriminatory purpose or motive.  [Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1101 (8th Cir. 1988).]

6.  You have heard evidence that the defendant's treatment of the plaintiff may have been motivated by the plaintiff's perceived disability and also by other lawful reasons.  If you find that the plaintiff's perceived disability was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason.  However, if you find that the defendant's treatment of the plaintiff was motivated by both perceived disability and lawful reasons, you must decide whether the plaintiff is entitled to damages.  The plaintiff is entitled to damages unless the defendant proves by a preponderance of the evidence that the defendant would have treated plaintiff similarly even if the plaintiff's perceived disability had played no role in the employment decision. [Desert Palace, Inc. v. Costa, 123 S. CT. 2148, 2152 (2003)]

7.  If you determine that the defendant discriminated against the plaintiff, then you must determine the amount of damages that he has suffered as a result.  You may award as actual damages an amount that reasonably

compensates the plaintiff for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that he would have received had he not been discriminated against.  Basically, you have the ability to make the plaintiff whole for any wages or other benefits that he has lost as a result of the discrimination against him.  [Lorillard v. Pons, 434 U.S. 575 (1978); Faris v. Lynchburg Foundry, 769 F.2d 958 (4th Cir. 1985); Blum v. Western Electric Co., 731 F.2d 1473 (10th Cir. 1984); Devitt, etc., supra, §§ 104.06, 104A.11.]

8.  You shall also calculate separately, as future damages, a monetary amount equal to the present value of the wages and benefits that the plaintiff would have earned had he not been discriminated against for that period from the date of your verdict until the date when he would have voluntarily resigned or retired.  [Maxfield v. Sinclair International, 766 F.2d 788 (3d Cir. 1985); Blum v. Witco Chemical Corp., 829 F.2d 367 (3d Cir. 1987); Devitt, etc., supra, §§ 104.05, 104.06, 104A.11.]

9.  The plaintiff has alleged that, as a result of the defendants' intentional discrimination, he has suffered mental anguish, inconvenience and humiliation. The plaintiff has the burden of proving any compensatory damages by a preponderance of the evidence.  If you determine that the plaintiff has proven by

a preponderance of the evidence that he has experienced mental anguish, inconvenience or humiliation, you may award him damages for those injuries.  No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence.  No exact standard exists for fixing the compensation to be awarded for these elements of damages.  The damages that you award must be fair compensation -- no more and no less.  When considering the amount of monetary damages to which the plaintiff may be entitled, you should consider the nature, character, and seriousness of any mental anguish, inconvenience or humiliation he felt.  You must also consider its extent or duration, as any award you make must cover the damages endured by the plaintiff since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that Mr. Howell's emotional stress and its consequences have continued to the present time or can reasonably be expected to continue in the future.  [Devitt, etc., supra, §§ 104.05, 104.06, 104A.11; Adams v. Doehler-Harvis, 144 Mich. App. 764 (1985); Freeman v. Kelvinator, Inc., 569 F. Supp. 999 (E.D. Mich. 1979); Slayton v. Michigan Host, Inc., 122 Mich. App. 411, 332 N.W.2d 498 (1983); Riethmiller v. Blue Cross, 151 Mich. App. 188, 390 N.W.2d 227 (1986).]

10.  For a plaintiff who can perform a desired position with a reasonable accommodation to establish a prima facie case of discrimination because of disability, he must show (1) that he is an individual who has a disability within the meaning of the law, (2) that an employer covered by the statute had notice of his disability, (3) that with reasonable accommodation, he could perform the essential functions of the position sought, and (4) that the employer has taken an adverse employment action against him because of his disability. [Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001), quoting Stone v. City of Mt. Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997)]

11.  A disability is a physical or mental impairment that substantially limits one or more of the major life activities of an individual. [42 U.S.C. § 12102(2)(a)] An impairment substantially limits a major life activity if the individual is unable to perform a major life activity that the average person in the general population can perform, or is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. [Goldring v. Sillery Mayer & Partners, 119 F. Supp.2d 55, 59 (D. Conn. 1999), citing 29 C.F.R. §

28

1630.2(j)(1)(1998); <u>Ennis v. National Ass'n of Business and Educational Radio, Inc.</u>, 53 F.3d 55, 59 (4th Cir. 1995)]

12. To be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term. [<u>Toyota Motor Mfg., Ky, Inc. v. Williams</u>, 122 S. CT. 681, 691 (2002)]

13. 'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.' The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities. [<u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 122 S. Ct. 681, 691 (2002)] However, the phrase "substantially limits" is concerned with substantial *limitations* and not with *utter inabilities*. [<u>Lawson v. CSX Transportation, Inc.</u>, 245 F.3d 916, 924 (7th Cir. 2001)] To be substantially limited, a person must be unable to perform a major life activity that the average person in the general population can perform, or be significantly limited in the condition, manner, or duration under which the individual can perform that activity as compared to an average person in the general population. [<u>Webner v. Titan Distribution, Inc.</u>, 267 F.3d 828, 834 (8th Cir. 2001)]

29

14.  Prohibited discrimination on the basis of a "perceived" disability requires the plaintiff to show that the employer regarded him as disabled within the terms of the Americans with Disabilities Act.  There are two ways in which an employee can be unlawfully "regarded as" disabled  (1) an employer mistakenly believes that a person has a physical or mental impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  [Colwell v. Suffolk County Police Dept., 158 F.3d 635, 636, 646 (2nd Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999); Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. CT. 2139, 2149-50 (1999).]

## DEFENDANT'S PROPOSED JURY INSTRUCTION

1.    **ADA Defined**

The Americans with Disabilities Act prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard in regard to job application procedures, hiring, advancement, or discharge of employees, . employee compensation, job training, and other terms, conditions, and privileges of employment. "[1]

---

[1] 42 U.S.C. Section 12112(a)

Disability is defined to include "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[2]

## 2.    Being Regard as Having an Impairment

Even if the plaintiff does not have an impairment that substantially limits a major life activity, he may still bring an action under the ADA if he is regard by the defendant employer as having such impairment.

To establish that he is regarded as having a substantially limiting impairment, the plaintiff must establish by preponderance of the evidence that the plaintiff has an impairment that does not substantially limit a major life activity, but was perceived by the defendant as having such impairment. [3]

## 3.    Working as a Major Life Activity

In this case, the plaintiff has alleged and must  prove that the defendant regarded him as being substantially limited in the major life activity of working.

Being regard as substantial limited in the major life activity of working is defined as "significantly restricted in the ability to perform either a class of jobs or

---

[2] 42 U.S.C. Section 12102 (2)

[3] 1L. Sand, et al, Modern Federal Jury Instruction, Inst. 88A-11.

a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." [4]

**4.    Prima Facie Case**

To establish a prima facie case under the ADA, the plaintiff must demonstrate by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." [5]  (The plaintiff must make out a prima facie case of discrimination under the aforementioned standards if you find that the plaintiff has not met his burden of establishing a prima facie case on discrimination,  you must find for the defendant. [6]

---

[4]  29 CFR Section 1630.2 (j) (3) (I)
[5] Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001).
[6] Pursuant to the holding of Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998), this charge may be unnecessary as the courts should determine whether the McDonell Douglas burdens of production have been met..

32

5.    **Burden Shifting**

If you find that the plaintiff has met his burden of establishing a prima facie case on his discrimination and/or retaliation then you must determine whether the defendant has produced evidence of a legitimate nondiscriminatory reason to explain why they involuntarily transferred the plaintiff. If you find that the defendants have produced a legitimate non-discriminatory reason for involuntarily transferring the plaintiff, then the plaintiff now carries the burden to prove to you by a preponderance of the evidence that the legitimate reasons offered by the defendants were not true reasons but a pretext for discrimination[7] The evidence must suggest that the offered explanation is "unworthy of credence."[8]

6.    **Adverse Employment Action Was Because of Disability**

To satisfy this element, the plaintiff must prove by a preponderance of the evidence that the defendant took an adverse employment action against plaintiff because of plaintiff's disability or that the disability was a motivating factor in the decision to take that adverse action.

As I state the defendant must have acted because of plaintiff's disability or the disability was a motivating factor in the decision to take that adverse action.

---

[7] Texas Dep. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)
[8] Reeves v. Sanderson Plumbing Products, Inc.,  530 U.S. 133, 143 (2000).

33

This means that the plaintiff's disability was a factor that made a difference in the decision to take this action. Thus, this element is not satisfied if you find that the defendant would have taken the same action in the absence of plaintiff's disability.

An employer may also take an adverse employment action against an employee for unacceptable behavior in the workplace, even if that behavior was a result of the employee's disability.[9]

**7.    Proximate Cause**

I will now explain a legal principle that is applicable to all of the plaintiff's claims. The legal principle is called "proximate cause." "Proximate Cause" means that there must be a sufficient causal connection between the act or omission of a defendant and any injury or damage sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury or damage. As with other issues in this case, the plaintiff must prove to you, by a preponderance of the evidence, that the defendant's actions were the proximate cause of the plaintiff's injuries. This is true for each of the defendants: that is, if you find more than one defendant

---

[9]  1L. Sand, et al, Modern Federal Jury Instruction, Inst. 88A-20.

liable under the rules I have explained to you, you must consider whether, or to what extent, that defendant's actions caused the plaintiff's injuries and losses.

**8.    Damages**

Now, if you have found plaintiff D. Clark Howell has failed to prove, by a preponderance of the evidence, that any defendant acted illegally against him, then you should return your verdict for the defendant, and that will end your deliberations.

If, however, you determine that the defendants acted illegally under the rules of law that I have explained, then at that point, and only then, are you to consider what compensatory damages, if any, are due to the plaintiff.

Of course, the fact that I give you instructions on damages should not be taken as an indication that I think damages should, or should not, be awarded. That determination is left entirely to you, the jury.  It is my duty to instruct you on principles governing damage awards so that, in the event you should find the defendant liable, you will know on what basis to consider any award of damages.

You may only award those damages which the plaintiff has proven, by a preponderance of the evidence, to have been suffered, and which were proximately caused by the conduct of the defendant or defendants you find to be

35

liable.  Conduct is considered a proximate cause if it was a direct and substantial factor in causing the injury.

**9.**    **Actual Damages**

If you find in favor of plaintiff then you must award the plaintiff the amount of any differential in salary plaintiff would have earned in his employment with defendant if he had not been transferred, through the date of your verdict, minus the amount of earnings and benefits from other employment received by plaintiff during that time.

[You are also instructed that the plaintiff has a duty under the law to "mitigate" his damages -- that is, to exercise reasonable diligence under the circumstances to minimize his damages.  Therefore, if you find by a preponderance of the evidence that the plaintiff failed to seek out or take advantage of an opportunity that was reasonably available to him, you must reduce his damages by the amount he reasonably could have avoided if he had sought out or taken advantage of such an opportunity.] If the plaintiff rejects an offer of substantially similar employment, he loses his right to pay after such rejection.[10]

---

[10] Shannon v. Fireman's Fund Ins. Co. 136 F. Supp.2d 225 (2001) (S.D.N.Y.2001) (Scheindlin, J).

36

[Remember, throughout your deliberations, you must not engage in any speculation, guess, or conjecture and you must not award damages under this Instruction by way of punishment or through sympathy.][11]

**10.    Compensatory Damages**

There are two kinds of damages that you may consider.  The first is compensatory damages:  a sum of money that will fairly, adequately and reasonably compensate a person for harm proximately caused by another's conduct.  You may consider any dollar loss suffered, such as for medical expenses or lost wages, as well as a reasonable amount to compensate for any pain and suffering, including emotional pain and suffering, that you find to have occurred.  However, you may not award damages unless the plaintiff has demonstrated actual injury as I have defined it.

**11.    Non-Economic Damages**

In addition to damages for loss of pay, a prevailing plaintiff in an ADA action is entitled to damages for the emotional pain, suffering, inconvenience, loss of enjoyment of life, and mental anguish the plaintiff has suffered as a result of defendant's conduct.

---

[11] 1L. Sand, et al, Modern Federal Jury Instruction, Inst. 88-150.

37

In this regard you should not award damages for speculative injuries, but only for those that the plaintiff actually suffered as a result of the defendant's conduct or which the plaintiff is reasonably likely to suffer in the near future.

You must also consider whether and to what extent the plaintiff's emotional anguish has been due to a condition that existed prior to plaintiff's transfer or arose from events other than the actions of the employer.[12]

**12.    Attorney's Fees**

In awarding damages in this case you should not be concerned by the attorney's fees to which the plaintiff's attorney may be entitled for handling this lawsuit.  That is a matter for this Court to consider, and may be awarded over and above damages awarded by the jury to the plaintiff.  The fees to which the plaintiff's attorney may be entitled for handling this lawsuit are not a proper element of damages and may not be a part of your deliberations.[13]

**(3)    Proposed Verdict Form:**

1.  Has the plaintiff proved that the defendant regarded him as disabled?

Yes _____                No _____

---

[12]  1L. Sand, et al, Modern Federal Jury Instruction, Inst. 88A-29.

[13] A similar instruction was given by the Hon. Jose A. Cabranes in Bodner v. Haeckel, Civil No. N-86-338 (JAC).  In a previous case before Judge Cabranes, the jury had awarded "the fees of plaintiff's attorney" as the sole express damages.

38

2.  If your answer to Question 1 is "yes," has the plaintiff also proved that the defendant's perception that the plaintiff was disabled was a motivating factor in its decision to transfer the plaintiff out of Hyde Leadership High School?

Yes _____                    No _____


3.  If you have answered "yes" to both Question 1 and Question 2, what amount of money do you award the plaintiff to compensate him for his past economic losses caused by his transfer?

$_____


4.  If you have answered "yes" to both Question 1 and Question 2, what amount of money do you award the plaintiff to compensate him for his future economic losses caused by his transfer?

$_____


5.  If you have answered "yes" to both Question 1 and Question 2, what amount of money do you award the plaintiff to compensate him for his past emotional distress caused by his transfer?

$_____


39

6.  If you have answered "yes" to both Question 1 and Question 2, what amount of money do you award the plaintiff to compensate him for his future emotional distress caused by his transfer?

$_____

## DEFENDANT'S PROPOSED VERDICT FORM

The plaintiff, Clark Howell, claims that the defendant discriminated against him based upon a perceived disability.

You must first decide if Mr. Howell has met his burden of establishing a prima facie case of discrimination.   Your conclusion in each instance must be unanimous.

If you do find that he has proven a prima facie case of discrimination then you must determine whether the defendant has offered evidence of a legitimate non-discriminatory reason for the plaintiff's transfer.  Again, your conclusion in each instance must be unanimous.

If you determine that the defendant has not met its burden of producing evidence of a legitimate non-discriminatory reason for its transfer of the plaintiff then you would find for the plaintiff. Again, your conclusion in each instance must be unanimous.

40

If you find that the defendants have produced evidence of a legitimate nondiscriminatory reason for transferring the plaintiff, then the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant's is not worthy of belief. Again, your conclusion in each instance must be unanimous.

1)   Has the plaintiff proved by a preponderance of the evidence that the defendant perceived him, to be disabled under the meaning of the ADA?
     If your answer is yes turn to question 2, if your answer is no, then you must find for the defendant.

                    Yes _____                    No _____

2)   Has the plaintiff proven his claim that his transfer was under circumstances given rise to an inference of discrimination based on a perceived disability under the ADA? If your answer is yes turn to question 3, if your answer is no, then you must find for the defendant.

                    Yes ____                     No _____

3)   Have the defendants produced evidence of a legitimate nondiscriminatory reason to explain why they terminated the plaintiff . If the answer is no, you must find for the plaintiff and go to question number 5 and determine damages. If the answer is yes go to question number 4.

                    Yes _____                    No _____

41

4.      Has the plaintiff proven his claim by a preponderance of the evidence that the legitimate reasons offered by the defendant were not true reasons but a pretext for discrimination? If the answer is yes go to question number 5 and determine damages. If the answer is no, you must find for the defendant.

Yes _____                          No _____

5.      a.) What past compensatory damages is the plaintiff entitled?

$ _____

b.) What future compensatory damages is the plaintiff entitled?

$ _____

c.) What past non-economic damages is the plaintiff entitled?

$ _____

d.) What past non-economic damages is the plaintiff entitled?

$ _____

e.) Total Damages              $ _____

## (11)(A)      PLAINTIFF'S OBJECTIONS TO PROPOSED JURY CHARGE:

1.  Plaintiff objects to defendant's Proposed Jury Charge #6.  This proposed charge would require that the defendant's actions be "motivated" by the

42

plaintiff's "disability" whereas it should require that "one motivating factor" for the defendant's actions be the plaintiff's "perceived disability".

2.  The plaintiff objects to the defendant's proposed jury charge # 12.  It is error to charge the jury in any civil rights case where there is a fee-shifting statute on the subject of attorney fees.  Fisher v. City of Memphis, 234 F.3d 312, 319 (6th Cir. 2000); Brooks v. Cook, 938 F.2d 1048 (9th Cir. 1991).  See also HBE Leasing Corp. v. Frank, 22 F.3d 41, 45 (2d Cir. 1994).

## 11(B)  DEFENDANT'S OBJECTIONS TO PROPOSED JURY INSTRUCTIONS:

1.     Defendant's Objections to Plaintiff's Proposed Jury Instructions # 3

**Objection:**  Plaintiffs claims are not based on a protected class but upon a perceived disability under the ADA. Price Waterhouse is a Title VII claim not an ADA and therefore does not apply to the instant case.

2.     Defendant's Objections to Plaintiff's Proposed Jury Instructions # 4

**Objection:**    Standards set forth by the plaintiff refers to protected class standards and are not the standards for a claim under the ADA or Section 504 of the Rehabilitation Act.  See Defendant's Proposed Jury Instruction Number 4 for proper standards.

3.     Defendant's Objections to Plaintiff's Proposed Jury Instructions # 5

**Objection:** Plaintiff's claims are not based on a protected class but upon a perceived disability under the ADA. <u>Estes</u> is a Title VII claim not an ADA and therefore does not apply to the instant case.

4.      Defendant's Objections to Plaintiff's Proposed Jury Instructions # 6

**Objection**:  Plaintiff's claims are not based on a protected class but upon a perceived disability under the ADA. <u>Desert Palace</u> is a Title VII claim not an ADA and therefore does not apply to the instant case.

5.      Defendant's Objections to Plaintiff's Proposed Jury Instructions # 10

**Objection:** Plaintiff's request for this charge is inappropriate as this charge is for a disability rather than a perceived disability, which is the issue in the instant case.

6.      Defendant's Objections to Plaintiff's Proposed Jury Instructions # 11

**Objection:** Plaintiff's request for this charge is inappropriate as this charge is for a disability rather than a perceived disability, which is the issue in the instant case.

7.      Defendant's Objections to Plaintiff's Proposed Jury Instructions # 12

**Objection:** Plaintiff's request for this charge is inappropriate as this charge is for a disability rather than a perceived disability, which is the issue in the instant case.

8.     Defendant's Objections to Plaintiff's Proposed Jury Instructions # 13

**Objection:** Plaintiff's request for this charge is inappropriate as this charge is for a disability rather than a perceived disability, which is the issue in the instant case.

THE PLAINTIFF


BY:_____
        JOHN R. WILLIAMS
        Federal Bar No. ct00215
        51 Elm Street
        New Haven, CT 06510
        203/562-9931
        FAX:  203/776-9494
        E-Mail: jrw@johnrwilliams.com
        His Attorney


THE DEFENDANT


BY:_____
        AUDREY C. KRAMER
        Federal Bar No. ct14520
        Assistant Corporation Counsel
        165 Church Street
        New Haven, CT 06510
        203.946.7968
        Its Attorney