UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| D.CLARK HOWELL | : | |
|     Plaintiff | : | CASE NO. 3:02-CV-00736 (JBA) |
| VS. | : | |
| NEW HAVEN BOARD OF EDUCATION, ET AL. | : | FEBRUARY 18, 2005 |
|     Defendant | | |

**SUPPLEMENTED MEMORANDUM IN SUPPORT OF
DEFENDANT NEW HAVEN BOARD OF EDUCATION'S
MOTION FOR JUDGMENT AS A MATTER OF LAW, REMITTITUR, OR IN THE
ALTERNATIVE FOR A NEW TRIAL**

**I. NATURE OF THE CASE**

The plaintiff claims that the New Haven Board of Education violated his rights under the American with Disabilities when they involuntary transferred him to a school that paid 25% less than his former school.

**II. LAW AND ARGUMENT**

    **A.   STANDARD FOR JUDGMENT AS A MATTER OF LAW**

Judgment as a matter of law of law is appropriate when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or [where there is] such an overwhelming amount of evidence in favor of the movant that

reasonable and fair minded persons could not arrive at a verdict against [the movant]." Logan v. Bennington College Corporation, 72 F.3d 1017, 1022 (2d Cir.1995). The court must view the evidence in a light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences which the jury might have drawn in their conclusion. Bradway, et al. V. Gonzales, et al., 26 F.3d 313, 317 (2d Cir.1994).; Logan, 72 F.3d at 1022. The motion should be granted if the court, with credibility assessments and inferences made against the moving party, finds that a reasonable juror would have been compelled to accept the view of the moving party. Bradway et al., 26 F.3d at 317 (Citing Piesco v. Koch, 12 F.3d 332, 343 (2d Cir.1993)).

      B.     **STANDARD FOR MOTION FOR A NEW TRIAL**

"Rule 59(a) provides: 'A new trial may be granted…for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the United States.' " DLC Management Corp v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir.1998)(citations omitted). As a general matter " a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or…the verdict is a miscarriage of justice." *Id*. A new trial may be granted when the jury's verdict is against the great weight of the evidence." Id. Unlike a judgment as a matter of law (Rule 50 motion), a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Id at 133-134.

"If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." Tingley Systems Inc. v. Norse Systems, Inc., 49 F.3d 93, 96 (2d Cir. 1995).

### C. PLAINTIFF'S CLAIM OF VIOLATION OF HIS RIGHTS UNDER THE AMERICAN WITH DISABILITIES ACT FAIL AS A MATTER OF LAW.

The plaintiff claims that the defendant discriminated against him on the basis of a perceived disability in violation of the ADA.

In order to recover under the ADA, said disability would need to fall within the ADA guidelines. Under 42 U.S.C. Section 12102(2)(C) ("regarded as disabled"), the decisive issue is the employer's perception of his or her employee's alleged impairment. **See** Colwell v. Suffolk Count Police Dept., 158 F.3d 635,636 (2d Cir. 1998 cert. denied, 526 U.S. 1018 (1999); Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). The plaintiff must show not only that the defendants "regarded [him] as somehow disabled," but also that they "regarded [him] as disabled within the meaning of the ADA." Colwell at 646.

The plaintiff has not alleged that the perceived impairment, was perceived as substantially affecting the identified major life activities as required under the ADA. Giordano v. City of New York, 274 F.3d 740, 748. (2d Cir. 2001). To prevail under Section 12102(2)(C), Howell, therefore, must establish that the

3

defendants perceived him as substantially limited in his ability to perform a major life activity--in this case, "working."

In Sutton, the Supreme Court explained that an employee can be "regarded as" disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." 119 S. Ct. 2139, 2149-2150 (1999). Howell's allegations fall within the latter category. The defendant, he alleges, perceived him to be suffering from a disability. In this particular instance, the defendant only removed him from a position at a school in which he was working and moved him to another school, this is not sufficient under the ADA.

In order to be considered disabled as to the major life function of "working," Howell must show he was regarded as "precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton at 492. Thus, it is not sufficient that the defendant view the plaintiff as being disabled and therefore precluded from one particular job. The defendant would need to view the plaintiff as a result of his disability as the major life activity of "working" as being precluded from a broad range of jobs or broad class of jobs within the plaintiff's field. Heilweil v, Mount Sinai Hosp., 32 F.3d 718, 724 (2d Cir,. 1994) (citations omitted).

4

There is no allegation that the defendants perceived Howell as unable to work in a "broad class of jobs." Actually there are indications to the contrary, as the Board reassigned the plaintiff to teach at a different school within its system Howell has the burden of proof on the issue. See Colwell, 158 F.3d at 647 citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 872 (2d Cir. 1998)).

The court in denying defendant's motion for summary judgment stated that "Because the plaintiff's evidence can demonstrate that principal John Russell [hereinafter "Russell"] perceived him as mentally disabled and, by Howell's account falsely accused him of bad conduct, to the extent Russell's accusations were the product of his perception of Howell's disability, they may be shown to have in effect tainted the disciplinary process. "

Howell was aware of John Russell's writing critical memos for placement in his personnel file regarding his conduct as early as March 2000. Transcript of Clark Howell II, p. 17 ("Howell Tr. II").[1]  Russell informed Howell that he was going to write him up about the sarcastic comments he made in a meeting regarding the incident involving Allison Improta and the two special education students. Howell Tr. II, p. 155.  Plaintiff's Ex. 19.  Howell admitted the incident and admitted to becoming loud and angry during the meeting that was held to discuss the incident. Howell Tr. II p. 156.  Howell was also written up about a incident in which he had a physical confrontation with a student, Terry Bowden. Plaintiff's Ex. 21.  Howell admitted to a physical confrontation with the student.

5

Howell Tr. II, p. 158-160. Another one of the memo's placed in Clark Howell's personnel file was regarding the comment he made about fellow teacher Chris Sagnella's wife. Plaintiff's Exhibit 24. Howell admitted that he made this comment and that it did not go over as he had hoped. Howell Tr. II, p.25-26.

Furthermore, Howell admitted that he sometimes had a tendency to put his foot in his mouth and did have some difficulties with his colleagues. Howell Tr. II, p. 168-169. John Russell wrote Howell up for cynical, sarcastic remarks, action and behaviors to other staff members. Plaintiff's Exhibit 17. Howell admitted that, "there was a couple of staff who have mentioned to me that they felt what I said was sarcastic. . . ." Howell Tr. II, p. 179.

The evidence clearly shows that the Russell did not falsely accuse Howell of bad conduct as Howell admitted to all incidences discussed in the memos.

There is also evidence that John Russell thought Howell was an excellent teacher and enjoyed having him on the staff. Transcript of John Russell, p. 20. ("Russell Tr.") (See Plaintiff's exhibits 18 and 22). As recently as June 6, 2000, Russell gave Howell an excellent evaluation. Plaintiff's Ex 22. There was no dispute that as of June of 2000, Russell believed Howell was a great teacher. Howell Tr. II, p. 185.

There was no evidence adduced that shows that Russell thought Howell to be mentally disabled. In fact, Howell himself testified that Russell had inquired

---

[1] All exhibits and portions of transcripts referenced herein are attached hereto.

of his health many times, not his mental health. Howell Tr. II, p. 136. In fact, Russell had been supportive of his diabetic needs. Howell Tr. II, p. 142.

On the Friday prior to the meeting/hearing regarding Howell's status at Hyde, Howell admittedly made comments of suicidal despair and his father wanting to kill Russell. Howell Tr. II, p. 172, 176. Dr. Mayo testified that it was these comments along with the admitted conduct that formed the basis of his decision to transfer Howell to another school to get a clean start . Transcript of Reginald Mayo, p. 129 ("Mayo Tr.") Mayo never questioned Howell's ability to teach and the transfer was based upon Howell's action in regard to the students and staff. Mayo Tr., p. 170-171.

The decision to transfer Howell by Dr. Mayo was not based upon false accusations of Russell but as to comments and actions of Howell that he admitted to.

The Board of Education did not view the Howell as being disabled within the meaning of the ADA as to this day he remains a teacher with the New Haven Board of Education.

### D. THE COURT ERRONEOUSLY SUBMITTED THE ISSUE OF FUTURE DAMAGES, I.E. FRONT PAY, TO THE JURY.

The defendant objected to the submission of future economic loss to the jury based on the plaintiff's failure to submit evidence as to his intention as to his future employment. The defendant also contends that future economic damages,

i.e. front pay, was improperly submitted to the jury, as it is an issue for the court.

The reason that front pay is an issue for the court to decide is because it is a form of equitable relief.  "District Courts have been granted the broad discretionary power in determining whether to award front pay as a possible equitable remedy for plaintiff's damages." Evans v. State of Connecticut, 967 F.Supp. 673, 685 D. Conn. (1997).  "While a jury determined back pay, the determination of any front pay award is committed exclusively to the district court's equitable jurisdiction." Banks v. Travelers Companies, 180 F.3d 358, 364 (2d Cir. 1999).

Front pay may be awarded for future lost earnings to "make victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of finding comparable alternative employment." Padilla v. Metro North Commuter R.R., 92 F.3d 117, 125-26 (2d Cir. 1996)

The decision to award front pay is discretionary, and a request for front pay may be denied if the court finds the back pay award is sufficient to make the plaintiff whole. Greenway v. Buffalo Hilton Hotel, 951 F. Supp. 1039, 1064 (W.D.N.Y 1997) (citations omitted). See also Thurman v. Yellow Freight Sys., 97 F.3d 833, 835 (1st Cir. 1996) (affirming denial of front pay award when plaintiff received five year back pay award, attorneys fees and costs: "[v]iewing a front pay award in isolation for the purpose of measuring its contribution towards the

8

goal of an antidiscrimination statute is risky business. A front pay award – like any other single strand in a tapestry of relief – must be assessed as a part of the entire remedial fabric that the trial court has fashioned in a particular case."). "Where a plaintiff has been fully compensated for the injuries resulting from discrimination, front pay is not appropriate. In order to qualify for front pay, a plaintiff must have been diligent in seeking comparable employment and under no circumstances can the award be based on speculation." Rivera v. Baccarat, 34 F. Supp. 2d 870, 878 (S.D.N.Y 1999).

The three prerequisites for front pay i.e. future damages as set forth by the Second Circuit in Whittlesey are as follows:

1. An award of front pay presupposes that reinstatement is either impossible or impractical; and

2. The plaintiff has no reasonable prospect of obtaining comparable alternative employment; and

3. Both the plaintiff's likely mitigated earnings and the income that he would have received in the defendant's employ do not involve undue speculation.

Whittlesey v. Union Carbide Corp., 742 F.2d 724, (2d Cir. 1984).

"In calculating the size of the front pay award, the court must estimate the plaintiff's ability to mitigate damages in the future. This determination is subject to the court's discretion. Equitable factors which courts have considered in determining whether to award front pay include both the age of the plaintiff and

9

his reasonable prospects of obtaining comparable employment." Fernandez v. North Shore Orthopedic Surgery & Sports Medicine, P.C., 79 F. Supp. 2197, 204 (E. D.N.Y. 2000) (citations omitted).

In a person who is younger and an award encompasses ten years or more is considered unduly speculative because even if he continued in his employment he may or may not be fired or become incapacitated . Koyen v. Consolidated Edison Co., 560 F.Supp. 1161, 1168 (S.D.N.Y. 1983). see also Bonura v. Chase Manhattan Bank, N.A. 629 F. Supp. 353 (1986). (Front pay awards of 11 and 16 years unduly speculative); Frank v. Relin, 851 F.Supp. 87, 95 (W.D.N.Y. 1994) (Front pay of 20 years denied as that award is speculative unwarranted and excessive).

Plaintiffs have a duty to seek suitable other employment. Hine v. Mineta 238 F. Supp. 497, 501 (E.D.N.Y. 2003). The duty to mitigate damages by seeking employment elsewhere significantly limits the amount of front pay available. Koyen at 1168. In Palma v. Pharmedica Communications, Inc., 2003 WL 22750600 (D.Conn.), the court declined to hold the defendant employer liable for future damages (front pay) without regard to any continuing efforts the plaintiff may or may have not made to mitigate damages. "Without evidence of any current attempts to find comparable work, an award of front pay would be speculative." Rivera v. Baccarat, 34 F. Supp. 2d 870 (S.D.N.Y 1999)

Additionally, without evidence of an effort to seek a higher paying position, the court can only conclude that the plaintiff is content to remain at his current job

<u>Palma v. Pharmedica Communications</u>, 2003 WL 22750600 (D.Conn.)

All the aforementioned cases refer to termination but the duty to mitigate should not be any less when the defendant still employs the plaintiff. Howell did not make reasonable efforts, as he testified that he sought and was offered other employment but failed to follow through even so far as to determine the rate of pay and conditions of employment. Howell testified that Emmett O'Brien Tech wanted to hire him but he never talked about pay. Howell Tr. II, p. 179, 181.

Howell also received an offer from Wintergreen Magnet School whose pay was comparable to his previous pay. Howell Tr. II, p. 182. When asked on direct why he did not take the offer from Wintergreen Magnet, he stated, " There is (sic) a lot of reasons . . .. The single biggest one is if I leave New Haven, then the terrorists win." Howell Tr. II, p. 181. Although these reasons may justify in Howell's mind his reasons for not taking the employment offered to him, these reasons are not legally reasonable and therefore do not entitle Howell to front pay. The court may reasonably assume that since Howell has not made any continuing efforts to obtain other employment, he is content to remain at his current job, at his current rate of pay.

Furthermore, the defendants objected to the issue of future wage loss being submitted to the jury as the plaintiff submitted no evidence of how long he expected to work.

**E.    JURY'S VERDICT IN THE AMOUNT OF $40,000.00 FOR ECONOMIC LOSS TO DATE IS EXCESSIVE AND AGAINST THE GREAT WEIGHT OF EVIDENCE.**

The jury awarded the plaintiff compensatory damages for his economic loss to date. Such verdict is excessive in light of the evidence presented and as such, this court should grant a new trial or under the practice of remittitur, condition a denial of the motion for a new trial on the plaintiff's acceptance of damages in a reduced amount. As previously, discussed, the plaintiff did not make reasonable efforts to mitigate his damages, as he testified that he sought and obtained other employment but failed to follow through even so far as to determine the rate of pay and conditions of employment.

Therefore, the verdict for compensatory damages for his economic loss to date awarded by the jury is excessive and against the great weight of evidence as plaintiff failed to mitigate his damages.

**F.    JURY'S VERDICT IN THE AMOUNT OF $200,000 FOR EMOTIONAL DISTRESS IS EXCESSIVE AND AGAINST THE GREAT WEIGHT OF EVIDENCE.**

The jury awarded the plaintiff compensatory damages in the amount of $200,000.00 for emotional distress. There was no evidence presented by the plaintiff regarding any emotional pain, suffering, inconvenience, loss of enjoyment of life and mental anguish caused by his transfer. Such verdict is excessive in light of lack of the evidence presented and as such, this court should grant a new trial or under the practice of remittitur, condition a denial of

13

the motion for a new trial on the plaintiff's acceptance of damages in a reduced amount.

Therefore, the verdict for compensatory damages for emotional distress awarded by the jury is excessive and against the great weight of evidence.

### G. PURSUANT TO 42 U.S.C.A. SECTION 1981A(3)(D) DAMAGES IN AN ADA CASE ARE LIMITED TO $300,000.00.

The sum amount of compensatory damages for future pecuniary losses and emotional distress is $300,000.00 for an ADA case, pursuant to 42 U.S.C.A. Section 1981a(3)(D). As the sum total of the jury's award for future pecuniary losses and emotional distress is $410,000.00, the court must grant a remittitur to reduce this award to the statutory limit of $300,000.00.

### III. CONCLUSION

For the foregoing reasons, the defendant moves that this court grant its motion for judgment as a matter of law, remittitur, or in the alternative, grant the defendant a new trial.

THE DEFENDANT,

NEW HAVEN BOARD OF EDUCATION

/s/_____
       Audrey C. Kramer
       Assistant Corporation Counsel
       Office of the Corporation Counsel
       165 Church Street
       New Haven, Connecticut  06510
       Telephone No. 946-7968
       Federal Bar No. CT14520
       E-MAIL – Akramer@Newhavenct.net

## **CERTIFICATION**

**THIS IS TO CERTIFY** that a copy of the foregoing <u>Supplemented Memorandum in Support of Defendant New Haven Board of Education's Motion for Judgment as a Matter of Law, Remittitur, or in the Alternative for a New Trial</u> was mailed postage prepaid on February 18, 2005, to the following counsel of record and/or pro se parties:

John R. Williams, Esquire
51 Elm Street, Suite 409
New Haven, Connecticut  06510


/s/ _____
Audrey C. Kramer